| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:18-CR-155 (1) |
| | § | |
| FLOYD DARIL WAGNER | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Floyd Daril Wagner's ("Wagner") Emergency Motion for Compassionate Release (#47), wherein Wagner requests that the court reduce his sentence to time served or modify his sentence to home confinement due to the threat of Coronavirus Disease 2019 ("COVID-19"). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Wagner's motion. The Government filed a response in opposition (#48). Having considered the motion, Probation's recommendation, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.   Background

On February 21, 2019, pursuant to a non-binding plea agreement, Wagner pleaded guilty to Count One, Possession with Intent to Distribute Oxycodone and Other Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and Count Two, Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §§ 924(c), (c)(1)(A)(i) of the Indictment. As part of his plea, Wagner admitted in his Factual Basis that agents recovered and seized from Wagner over 122,000 prescription pills, including oxycodone, and 13 firearms, some of which were reported stolen. On July 25, 2019, the court sentenced Wagner to 135 months' imprisonment as to Count One and 60 months' imprisonment as to Count Two, to be served

consecutively to Count One, followed by a 5-year term of supervised release. Wagner is currently housed at the Federal Medical Center in Fort Worth, Texas ("FMC Fort Worth"), and his projected release date is June 7, 2032.

II.     Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant

compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 833-34; *Raia*, 954 F.3d at 597.

Wagner filed the instant motion on May 11, 2020. On May 18, 2020, the warden at FMC Fort Worth denied Wagner's request for compassionate release due to the COVID-19 pandemic. It is not clear whether Wagner complied with the exhaustion requirement before filing the instant motion; nonetheless, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C.

§ 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Wagner contends that he has various medical conditions that make him more vulnerable to complications from COVID-19. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

"suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Wagner, age 41, asserts that he has asthma, hypertension, pre-diabetes, metabolic syndrome, high cholesterol, and obesity. Nonetheless, according to the Physical Condition section of his Presentence Investigation Report ("PSR"), which was prepared in 2019, he only reported suffering from a herniated disc in his back as result of an automobile accident 10 years ago and that he was not prescribed any medications. Wagner provides no documentation to support his purported medical conditions. Moreover, Probation's investigation revealed that on August 14, 2019, Wagner completed a health assessment and physical subsequent to his arrival at BOP, at which time he did not report any medical issues, nor did the medical personnel identify any medical problems. Probation further reports that on April 30, 2020, Wagner tested positive for COVD-19, and, on June 4, 2020, he was classified as recovered. Thus, Wagner's medical summary does not meet the criteria listed in the guidelines. None of these real or alleged medical conditions is terminal or substantially diminishes his ability to provide self-care.

Wagner's request for compassionate release—based on his alleged medical conditions and risk of suffering complications from COVID-19—potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary

and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Wagner for any "other" reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Wagner's situation. As of July 14, 2020, the BOP reports 27 active, 12 deaths, and 577 recovered cases of COVID-19 among a total of 1,341 inmates and 4 active, 0 deaths, and 6 recovered cases of COVID-19 among staff at FMC Fort Worth. Although Wagner expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society

and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").

In fact, according to Probation, Wagner already contracted COVID-19, and the BOP evidently provided adequate care, as he has since recovered. Hence, it appears that the risks of complications or death due to COVID-19 that he contends are extraordinary and compelling reasons for compassionate release are no longer germane. Thus, Wagner has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court also finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). The nature and circumstances of Wagner's offense of conviction entails his possession with intent to distribute oxycodone and other

controlled substances and his possession of firearms in furtherance of a drug trafficking crime. Officers executed a search warrant at Wagner's residence where a confidential informant had conducted several controlled purchases of prescription narcotics, including oxycodone, from him. Officers discovered a large number of prescription pills along with 13 firearms (6 of which had been reported stolen) during the execution of the search warrant. Officers also recovered additional narcotics from a warehouse and 3 storage units Wagner leased, seizing over 122,000 prescription pills. Wagner was responsible for diverting shipments of narcotics from his employer, United Parcel Service ("UPS"), and selling controlled substances from his residence at night. Ultimately, officers recovered 275.08 grams of oxymorphone, 284.05 grams of oxycodone, and 266.17 grams of amphetamine (actual), 13 firearms, numerous items stolen from UPS packages, and approximately $14,000 in cash. Wagner has prior convictions for fictitious counterfeit license inspection and manufacture/delivery of a controlled substance. He also has a history of poly-substance abuse. Hence, the court cannot conclude that Wagner would not pose a danger to the safety of any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically

by case management staff. To date, the BOP has placed 6,877 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

Alternatively, Wagner requests home confinement. When the BOP declines to place an inmate in home confinement, as the warden apparently did here, the "[d]efendant's initial remedy to challenge this determination is by administrative action within the BOP. The proper vehicle to thereafter challenge the BOP's administrative decisions is a petition pursuant to 28 U.S.C. § 2241, which must be filed in the same district where the prisoner is incarcerated." *Castillo*, 2020 WL 3000799, at *3; *see Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). Wagner is currently incarcerated at FMC Fort Worth, which is located in the Northern District of Texas. Thus, assuming he remains incarcerated at that facility, any § 2241 petition must be filed in that court after first exhausting his administrative remedies.

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will

contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Wagner's track record is similarly a poor one.

In short, Wagner has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.  Conclusion

Consistent with the foregoing analysis, Wagner's Emergency Motion for Compassionate Release (#47) is DENIED. The court finds an evidentiary hearing is not warranted and his motion to stay the court's ruling is moot.

SIGNED at Beaumont, Texas, this 15th day of July, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE