| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO.  4:18-CR-155(1) |
| | § | |
| FLOYD DARIL WAGNER | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Floyd Daril Wagner ("Wagner") *pro se* Motion Requesting Leave to Amend 18 U.S.C. § 3582(c)(1)(A)(i) Emergency Motion for a Reduction or Modification of Sentence Pertaining to COVID-19 (#56), which the court construes as a request for reconsideration of the court's July 15, 2020, Order (#54) denying his initial motion for compassionate release.  Wagner also filed a *pro se* motion for appointment of counsel (#57).  On July 27, 2020, Wagner filed a notice of appeal as to the court's previous Memorandum and Order (#54) with the United States Court of Appeals for the Fifth Circuit.  On April 16, 2021, the Fifth Circuit dismissed his appeal for want of prosecution (#68).  United States Pretrial and Probation Services ("Probation") submitted an updated report, which recommends the denial of Wagner's motion.  The Government also filed a supplemental response in opposition (#65).  Having considered the motions, Probation's recommendation, the Government's response, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.    Appointment of Counsel

Wagner requests the appointment of counsel to assist him in filing his reconsideration for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v.*

*Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must

demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Wagner is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Wagner provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Wagner has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Wagner is 41 years old, and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").

II. Compassionate Release

In Wagner's renewed motion for compassionate release, Wagner reasserts his previously disclosed medical conditions—asthma, hypertension, pre-diabetes, metabolic syndrome, high cholesterol, high blood pressure, and obesity—which the court addressed in its prior Memorandum and Order. Wagner now raises a new medical condition, Cerebral Autosomal Dominant Arteriopathy with Sub-Cortical Infarcts and Leukoencephalopathy ("CADASIL"), which he claims affects his neurological functioning and caused him to suffer a stroke, leaving him with numbness in his left leg.

When a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id*; *accord United States*

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

*v. Keys*, ___ F. App'x ___, No. 20-61192, 2021 WL 1732282, at *1 (5th Cir. Apr. 30, 2021); *United States v. Cooper*, ___ F.3d___, No. 20-20485, 2021 WL 1661493, at *3 (5th Cir. Apr. 28, 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392. Nevertheless, while recognizing that they are not binding, the court finds that the

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). At present, the Commission has only one voting member.

Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

In his initial motion for compassionate release, Wagner, age 41, asserted that extraordinary and compelling reasons for his release existed due to his medical condition. In its Memorandum and Order, dated July 15, 2020 (#54), the court considered Wagner's medical conditions—specifically, his asthma, hypertension, pre-diabetes, metabolic syndrome, high cholesterol, and obesity and determined that his medical status did not constitute an extraordinary and compelling circumstance warranting his early release from prison. The United States Court of Appeals for the Fifth Circuit subsequently held in *Shkambi* that when a defendant files a motion for compassionate release on his own behalf, the Sentencing Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *Id.* at *4. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what

6

reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). Upon reconsideration, the court again finds that Wagner's medical conditions do not suffice, as they are not terminal, do not substantially diminish his ability to provide self-care in the institutional setting, or otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433.

According to his BOP medical records, Wagner was recently diagnosed with CADASIL. On April 13, 2021, John David Orr, D.O. ("Dr. Orr"), noted in a report of consultation for neurology that:

> Dr. Eilert very carefully reported and the patient confirmed today that what happened on 3/21/2021 when he went to the hospital was that he passed out. He passed out and hit his head. My diagnosis today is that because he had sudden difficulty with breathing, could not get his meter dose inhaler, is on high doses of Propranolol for migraine prophylaxis, he had a sudden syncopal spell and then fell and had a concussion with a seizure as a result of post concussive effect. . . . On MRI scanning from the ER, there was no evidence of acute ischemic stroke. . . . Patient needs to be worked up for multiple sclerosis. . . . The results of all these studies are that there is evidence of subcortical leukoencephalopathy but not evidence of a seizure focus. EEG was completely normal . . . [T]he patient did not have a sustained generalized tonoclonic convulsion. . . . I do not think that this patient had a primary seizure. I think the patient had a syncopal event related to problems with his meter-dose inhaler, asthma and triggered a vasodepressor syncopal event that was followed immediately by a concussion and a post concussive seizure. There is no evidence on EEG that this patient has ongoing seizure activity. There is no evidence on imaging studies that he has a seizure focus. The patient has had no prior history of seizure activity. CADASIL itself is not associated with seizure or epilepsy. . . . This patient does have a diagnosis now of CADASIL. . . . There is no specific treatment or cure for this small vessel cerebral vaculopathy.

Dr. Orr further concludes that Wagner's prior history and report of lower extremity numbness and sciatica are likely related to lumbar spondylosis. Thus, it appears from Dr. Orr's consultation

report that Wagner's "strokes" and numbness are not related to CADASIL.[4] Moreover, in a prior consultation report, dated March 9, 2021, Dr. Orr reported that:

> Theoretically, a patient who had a familial genetic syndrome like CADASIL could be at increased risk for thrombophilia [blood clotting] as a result of a COVID-19 infection. Now the patient reports the symptoms have all gone away of COVID-19 and he has been vaccinated. Therefore, he is not at risk at this time for the same thrombophilia related to active viral infection.

According to Wagner's medical documentation, he is receiving physical therapy to address the numbness in his legs.

To the extent that Wagner continues to seek compassionate release on the basis of his obesity, the Government acknowledges that it can be a risk factor for COVID-19. According to the CDC, however, 42.5% of the adult population in the United States is obese and 73.6% is overweight. Due to its prevalence, obesity cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Cotto*, No. CV

---

[4] According to a medical record dated March 27, 2021, an MRI and EEG were performed on Wagner to rule out that he suffered a stroke, and the tests came back negative for stroke.

16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of obesity and diabetes but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

Furthermore, Probation advises that Wagner tested positive for COVID-19 on April 30, 2020, was placed in isolation, and has now recovered from the virus. Courts have repeatedly denied motions for compassionate release filed by inmates who, like Wagner, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.")); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10,

9

2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Probation also reports that Wagner has been inoculated with the Pfizer COVID-19 vaccine; he received the first dose on February 24, 2021, and the second dose on March 15, 2021. To date, the BOP has administered approximately 179,796 doses of the vaccine. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who, like Wagner, have been vaccinated for COVID-19. *See United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex.

Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection."); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021). According to www.bop.gov, as of May 24, 2021, Federal Medical Center Fort Worth, where Wagner is housed, has fully inoculated 944 inmates and 218 staff members. Moreover, there is 1 inmate (out of a total inmate population of 1,308) and 0 staff members at the facility who have confirmed positive cases of COVID-19, 699 inmates and 48 staff members who have recovered, and 14 inmates who succumbed to the disease. Therefore, Wagner has failed to establish the existence of sufficient reasons based on his medical condition or the COVID-19 pandemic that would constitute extraordinary and compelling reasons to reduce his sentence.

The court also notes that Wagner has served approximately 16% of his 195-month sentence of imprisonment for his convictions for possession with intent to distribute oxycodone and other controlled substances and possession of firearms in furtherance of a drug-trafficking crime. Serving such a small portion of his sentence would not provide just punishment for the offense or afford adequate deterrence to criminal conduct under the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Chambliss*, 748 F.3d 691, 693-94 (5th Cir. 2020); *Thompson*, 984 F.3d at 434-35. It is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94; *accord Keys*, 2021 WL 1732282, at *1 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed]

to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal."). Releasing Wagner at this time would minimize the impact of his crime and the seriousness of his offense, in which he distributed large quantities of oxymorphone, oxycodone, and methamphetamine, and possessed 13 firearms in furtherance of his drug-trafficking activities. In exercising its discretion, the court finds that Wagner has failed to establish that a medical condition, COVID-19, or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

In sum, the court finds, as before, that Wagner does not raise any substantial factual or legal issues warranting relief, establish that he would not pose a danger to society if released from prison, or otherwise demonstrate that compassionate release is warranted. Accordingly, Wagner's Motion to Amend (#56) and Motion for Appointment of Counsel (#57) are DENIED.

SIGNED at Beaumont, Texas, this 24th day of May, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE