

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, PLAINTIFF/RESPONDENT, | § § § | |
| V. | § § | CASE NO. 4:18-CR-00155-SDJ-CAN |
| FLOYD DARIL WAGNER, DEFENDANT/PETITIONER. | § § § | |

REPLY TO RESPONDENT'S RESPONSE TO MR. WAGNER'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

TO THE HONORABLE SEAN C. JORDAN, UNITED STATES DISTRICT JUDGE:

NOW COMES the defendant/petitioner Floyd Daril Wagner ("Wagner") herein appearing in pro se files his Reply to Respondent's Response to Mr. Wagner's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and will state and argue the following:

## DISCUSSION IN REPLY

CADASIL - is a non-treatable, non-curable, terminal disease with "sudden death" as the first cause of mortality.[1]

In the respondent's response they admit in one section that CADASIL is a terminal disease that is not currently treatable to halt the progression of CADASIL (ECF No. 79, p. 12).

Then, in another section without any report submitted from a Dr. Reyes, the social worker wrongly reports - "but does not diagnose him with it." (ECF No. 79, p. 10). Therefore, the

---

[1] See motion to Provide Documentary Evidence in Support of 18 U.S.C. § 3582(c)(1)(A)(i) compassionate release Motion filed July 5, 2022.

1

complete alleged finding by the social worker, Sturdivant, is vastly and profoundly unsupportive, even these alleged conversations with Wagner.

I. **ARGUMENT IN REPLY**

No one can dispute that CADASIL is a terminal illness disease.

No one can dispute that on September 7, 2021, UNT Health Patient Services, neurologist clearly diagnosed Mr. Wagner with the terminal disease CADASIL. ECF No. 72, p. 4-5, with attached Exhibits. Now, let's review the September 7, 2021 neurologist's medical report: (1) Wagner is diagnosed with the deadly disease CADASIL. (2) Wagner is an excellent candidate for research protocols which can only be performed on an outpatient basis and not while an inmate in the Federal Bureau of Prisons. (3) Wagner cannot self-care for himself in prison, as he fell down the stairs. (4) Wagner's disease has progressed even more since his COVID-19 infection. (5) Wagner has had multiple strokes consistent with his underlying cerebrovascular disease. (6) Wagner suffers from pain in his lower extremities and symptoms of paresthesias.

Now, let's review the neurologist's October 6, 2021 diagnosis: (1) Mr. Wagner has CADASIL. (2) Wagner has sustained multiple infarcts from the CADASIL. (3) Wagner has very abnormal findings on his MRI, which shows extensive, diffuse, severe small vessel microangiopathic type cerebrovascular disease are presumably due to this inherited disorder. (4) There are no known treatment or cure for this disorder. (5) Wagner has a very

2

rare disorder, which is irreversible. (6) <u>The neurologist medical protocol is that Wagner be considered for compassionate release so that he can attend a tertiary level medical school based specialty clinic in cerebrovascular disease to be followed by a specialist in this disorder so that they may be able to enroll him in clinical trials that will provide hopefully a treatment and cure for this disorder in the future for other patients.</u> (7) The neurologist states the risk of death is much higher to Wagner.

This medical diagnosis is undisputed. While the respondents conveniently failed to provide the neurologist, which is a Board Certified cerebrovascular specialist, who is reporting from experience and Mr. Wagner's medical examinations.

While, it appears the respondent may be "poking fun" at Mr. Wagner's medical condition, by stating - "While it is admirable that Wagner is willing to donate his "live CADASIL disease body" to 'medical science,' his 'medical conditions [still] do not suffice, as they are not terminal, do not substantially diminish his ability to provide self-care in the institutional setting, or otherwise present extraordinary and compelling reasons justifying compassionate release." ECF No. 79, p. 11.

First, the neurologist profoundly recommended the compassionate release and that his live body be donated now to science in an effort to save the lives of others as argued above. Second, from the respondent's own Exhibit A, it shows Wagner cannot self-care in the institutional setting from him falling down the stairs as argued above; to "because of the

3

emboli, he would continue to experience pain in his chest." See July 25, 2022 encounter' Wagner has pulmonary embolism and TIA which are worsening; see, July 13, 2022 encounter; Wagner lost consciousness in his cell and fell and struck his face on the table before falling to the ground. See, July 2, 2022 encounter report; Wagner had to be escorted to the NCC unit due to severe headaches, which are occurring regularly now. See, January 10, 2022 encounter.

In fact, Wagner is confined to his cell mostly all hours of the day due to his CADASIL terminal illness.

The respondents even wrongly state, "[f]urthermore, Wagner fails to demonstrate how release, after approximately 53 months into a 195 month sentence for a serious drug crime..." ECF No. 79, p. 11. How many inmates/prisoners in Federal custody have a terminal disease with a "sudden death" end of life trajectory. (Emphasis supplied). The release will allow Wagner to meet the neurologist's medical protocol of him being placed in a tertiary level medical school based specialty clinic in cerebrovascular disease, so that he can enroll in clinical trials that will hopefully provide a treatment and cure, in the future to save his life and the lives of others. ECF No. 72, p. 8; ECF No. 72-3, at 2. The respondent's argument is factually misplaced and wrong.

Further, multiple courts have held that lesser extraordinary and compelling reasons than what appears here, warrant granting compassionate release sentence reduction, which trumps the amount of time an offender/prisoner has served. In fact,

4

numerous courts have granted sentence reductions to prisoners who have served a portion of their sentences; in some cases, small fractions of the sentence were imposed. See, e.g., United States v. Cabrera, 2022 U.S. Dist. LEXIS 4148 (E.D. La. Jan. 10, 2022)(50%, 120 of 240 months); United States v. Ford, 2021 U.S. Dist. LEXIS 124585 (W.D. La. 2021)(49%, 120 months of 240 months); United States v. Guston, 2021 U.S. Dist. LEXIS 8237 (S.D. Miss. 2021)(51% 96 months of 180 months); United States v. Turner, 2021 U.S. Dist. LEXIS 36209 (E.D. La. 2021)(52%, 156 0f 293 months). See e.g., United States v. Shehee, 2020 WL 5229030, at *3 (E.D. Wash. Sept. 1, 2020)(7.8% 9 months of 70 months imposed); United States v. Locke, 2020 WL 3101016, at *1(W.D. Wash. June 11, 2020)(096%, 6 of 62 months imposed); United States v. Ben-Yhwh, 2020 WL 1874125, at *2, *6 (D. Haw. Apr. 13, 2020)(14%, 8.5 of 60 months); United States v. Echeverria, 2020 WL 2113604, at *1 (D. Conn. May 4, 2020)(19%, 9 of 48 months); United States v. Delateur, 2020 WL 3989174, at *1 (W.D. Wash. July 1, 2020)(19%, 9 of 48 months); United States v. Brown, No. 2:18-CR-360, ECF. No. 32 at *2 (N.D. Ala. May 21, 2020)(20%, 12 of 60 months); United States v. Gorai, 2020 WL 1975372, at *1 (D. Nev. Apr. 24, 2020)(21%, 12 of 57 months); United States v. Rahim, 2020 WL 2604857, at *1 (E.D. Mich. May 21, 2020)(22%, 16 of 72 months); United States v. Delgado, 2020 WL 2464685, at *2 (D. Conn. Apr. 30, 2020)(24%, 29 of 120 months); United States v. Young, 2020 WL 2614745, at *4 (W.D. Wash. May 22, 2020)(25%, 15 of 60 months); United States v. Common, 2020 WL 3412233, at *1 (C.D. Ill. June 22, 2020)(28%, 33 of 120 months); United

5

States v. Jackson, 2020 WL 3396901, at *2 (N.D. Ind. June 19, 2020)(28%, 24 of 87 months); United States v. Watson, 3:18-CR-25 (D. NV. July 22, 2020)(Child Pornography defendant served 29%: 14 of 48 months imposed); United States v. Loyd, 2020 WL 2572275, at *1 (E.D. Mich. May 21, 2020)(29%, 35 of 120 months); United States v. Pabon, 2020 WL 2112265, at *1 (E.D. Pa. May 4, 2020)(30%, 14 of 46 months); United States v. Grubbs, 2020 WL 3839619, at *1 (W.D. Wash. July 8, 2020)(31%, 33 of 108 months); United States v. Winston, No. 1:13-CR-639-RDB, ECF. No. 295 at *2, 7 (D. Md. Apr. 28, 2020)(30%, 36 of 120 months); United States v. Hunt, 2020 WL 2395222, at *1 (E.D. Mich. May 12, 2020)(30%, 9 of 30 months); United States v. Casey, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020)(33%, 15 of 45 months); United States v. Shenk, No. 14-CR-29-SMR-HCA, ECF No. 76 at *5 (S.D. Iowa July 7, 2020)(33%, 59 of 180 months); United States v. Amarrah, 2020 WL 2220008, at *1 (E.D. Mich. May 7, 2020)(35%, 21 of 60 months); Miller v. United States, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020)(36%, 26 of 72 months); United States v. Browne, 2020 WL 3618689, at *1 (D. Mass July 2, 2020)(37%, 32 of 87 months); United States v. Jamil, 2020 WL 2614877, at *1 (N.D. Cal. May 21, 2020)(40%, 34 of 84 months); United States v. Kelley, 2020 WL 2850280, at *1 (N.D. Cal. June 2, 2020)(41%, 49 of 120 months); United States v. Kriglstein, No. 16-CR-00663, Dkt. No. 48 at 2 (April 11, 2020)(42%, 50 of 120 months); United States v. Park, 2020 WL 1970603, at *4, *5 (S.D.N.Y. Apr. 24, 2020)(44%, 16 of 36 months); United States v. Rountree, 2020 WL 2610923, at *1 (N.D.N.Y. May 18, 2020)(45%, 85

of 188 months); United States v. Saad, 2020 WL 2251808, at *1 (E.D. Mich. May 5, 2020)(46%, 33 of 72 months); United States v. Dana, No. 14-CR-405, ECF No. 105 at *2 (S.D.N.Y. Mar. 30, 2020)(46%, 5.5 of 12 months); United States v. Barber, 2020 U.S. Dist. LEXIS 1114545, at *1 (D.D.C. June 16, 2020)(45% 66 of 144 months); United States v. Morris, 2020 WL 4344945, at *1 (W.D. Wash. June 22, 2020)(48% 21 of 44 months); United States v. Bess, 2020 WL 1940809, at *1 (W.D.N.Y. Apr. 22, 2020)(49%, 41 of 84 months).[2]

---

[2] Congress recognized the Bureau of Prisons' inability to control the Pandemic when it passed the CARES Act on March 27, 2020, authorizing the Attorney General to increase the use of home confinement. See Letter from U.S. Rep. Jerrold Nadler, Chairman Comm. on the judiciary to Hon. William P. Barr, U.S. Atty. Gen. (Mar. 12, 2020), (https://judiciary.house.gov/uploadedfiles/2020-03-12_letter_to_ag_barr_re_covid-19.pdf)("it would be important, at this time, for DOJ to consider measures that can be taken to reduce the number of prisoners in government custody"); Letter from U.S. Sen. Kamala Harris to Michael Carvajal, Dir., Fed. Bureau of Prisons (Mar. 19, 2020), https://www.wdrb.com/news/crime0reports/us-starts-to-release-inmates-due-to-coronavirus-outbreak/article_114cb9ac-6ab3-11ea-a928-f3cffe6f1fec.html ("in the midst of this crisis, BOP should be taking reasonable steps to reduce the incarcerated population and guard against potential exposure to coronavirus:); U.S. Sens. Chuck Grassley & Dick Durbin, Grassley, Durbin Press Release after Phone Call with Attorney General Regarding Federal Prison System Efforts to Combat COVID-19 (May 6, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/24/us-senators-durbin-and-grassley-ask-inspector-general-to-assess-bureau-of-prisons-actions-to-covid-19/?sh=3d94109d6e68 ("The senators...urged the use of home confinement...to protect vulnerable inmates."); Letter from U.S. Sens. Elizabeth Warren, Edward J. Markey & Lori Trahan to Michael Carvajal, Dir., Fed. Bureau of Prisons (May 15, 2020), https://www.warren.senate.gov/download/20200515-letter-to-bop-director-carvajal-re-covid-19-testing-and-release-of-vulnerable-individuals-at-fmc-devens (critical the BOP depopulate prisons to the maximum extent possible").

Wherefore, based upon Wagner's terminal illness, and his need to be in the "clinical trials" weigh heavily in his favor for compassionate release. In addition, Wagner has served approximately 30% of his statutory term to serve on this sentence. It is noted that 25 of these above referenced cases are in similar time to serve as Wagner, with 16 of these cases were below the time Wagner has served. (Emphasis supplied). The respondent's argument of time serve "is not" a defining factor, when the Court has before it a "terminally ill petitioner."[3]

Also, the respondents want the Court to take the U.S.S.G., Application Note 1 of the policy statement under advisement or as guidance. Yet it clearly states -

(ii) The defendant is -

(I) suffering from a serious physical or medical condition-that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Your Honor, Mr. Wagner has CADASIL, a terminal cerebrovascular disease, in which currently there is no treatment or cure (Wagner at times cannot even stand up for institution count without falling and hurting himself, cannot walk down a minor set of stairs without falling and hurting himself, which are argued above and documented in Wagner's medical files. (Emphasis supplied).

---

[3] Respondents state Wagner has served 53 months on an aggregate 195 month sentence (ECF No. 79, p. 11), 135 months for drugs, 60 months for his firearm collection.

8

The BOP cannot provide adequate medical services during the pandemic, as recently as June 2022, in a decision in United States v. Eko, Case No. 4:19-CR-00905, (S.D. Tex., Houston June 16, 2022) - Mr. Wagner argues in two-fold: First, the district court denied Eko's motion for compassionate release. See, ECF No. 292. Eko subsequently filed a reconsideration motion for compassionate release with attached exhibits to meet the guidelines for early release (see, Exhibit 1, Govt. Response, p. 3). It is noted that Eko was at FMC Fort Worth, the same facility as Wagner. The government conceded as follows: "Defendant's motion for reconsideration provides considerable detail of his ongoing health conditions, including Type 1 diabetes, contracting COVID-19, and the subsequent acute kidney injury documented in defendant's Exhibit 001. <u>It does not appear his condition is being easily maintained by medication and continued incarceration may not serve the best interest of the defendant or society</u>. (Exhibit 1, p. 4-5 of Govt. Res.). Id, at ECF No. 299-301. The government did not oppose Eko's motion for reconsideration for compassionate release based upon Eko's argument that the FMC Fort Worth, BOP institution could not provide adequate medical care for his illnesses. Second, the district court was wise enough to review the entire record, analyze the evidence, that Eko's medical condition was not being well managed in prison. Id, at ECF No. 302, p. 2. (Ex. 1, p. 2).

In addition, FMC Fort Worth is on modified lockdown due to the pandemic (COVID-19), and cannot even check an inmates blood glucose. (Exhibit 2).

9

For sure, it cannot manage Mr. Wagner's terminal ill disease CADASIL. Especially, when the neurologist medical protocol states he <u>must</u> be in a <u>clinical trial</u> for CADASIL - which is a terminal illness disease.

Wagner's § 3553(a) factors, as argued before the Court in his original petition for compassionate release on July 5, 2022, as well as hereto - in the best interest of society (and to potentially save Wagner's life and the life of others) is best served by the neurologist's medical protocol - placement in clinical trials immediately while he is alive. (Emphasis supplied).

The government's response does not trump the needs of society, to attempt to save Wagner's life, and the attempt to save others' lives. To ease the Court's reference, Wagner hereto is providing the September 21, 2021 - clinical encounter - administrative note by Joelle Silva, LMSW, Fort Worth FMC, and the UNT Health Patient Services - Neurology reports dated October 8, 2021 and September 7, 2021.[4]

It is prima facie and conclusive, that Mr. Wagner has a terminal illness that he is not expected to get better from. It is undisputed that he has CADASIL and been infected with COVID-19. It is prima facie and conclusive that Mr. Wagner has extraordinary and compelling reasons that warrant this Court to <u>GRANT</u> him compassionate release (as well as follow the

---

[4] Respondents failed to provide these reports as part of their medical records Exhibit A. Also, they were filed with Wagner's July 5, 2022 motion filing as Exhibits.

10

neurologist medical protocol treatment plan). (Ex. 3), ECF No. 72, p. 4, 8.

## CONCLUSION

For these reasons, Mr. Wagner requests of the Court to GRANT his request for compassionate release and order that he be released immediately to the clinical trials, as requested.

Respectfully Submitted,

Floyd Daril Wagner, pro se
Reg. No. 28014-078
FMC Fort Worth
P.O. Box 15330
Fort Worth, TX 76119

## CERTIFICATE OF SERVICE

On this, the 17th day of August, 2022, I hand-delivered to staff at the institution for copying and mailing pursuant to Houston v. Lack, 487 U.S. 266, 270-71 (1988) addressed to the following:

Clerk of the Court
United States District Court
Eastern District of Texas
101 E. Pecan Street, 1st Floor
Sherman, Texas 75090

7019 2970 0000 5522 0508

Ms. Traci M. Batson, AUSA
101 E. Pecan Street, Suite 500
Sherman, Texas 75090

Floyd Daril Wagner