UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-155-SDJ |
| | § | |
| FLOYD DARIL WAGNER | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Floyd Daril Wagner's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #72); Motion to Provide Documentary Evidence in Support of 18 U.S.C. § 3582(c)(1)(A)(i) Compassionate Release Motion, (Dkt. #73); and Motion to Provide Documentary Medical Evidence Under "Seal," (Dkt. #83). The Government filed a response in opposition to the compassionate release motion.[1] (Dkt. #79).

The Court construes Wagner's compassionate release motion as a request for reconsideration of the Court's previous two orders denying compassionate release. *See* (Dkt. #54, #69). Having considered the motions, briefing, the record, and the applicable law, the Court **DENIES** Wagner's instant compassionate release motion, **GRANTS** his motion to provide documentary evidence in support of his compassionate release motion, and **GRANTS in part and DENIES in part** his motion to provide documentary medical evidence under seal.

---

[1] The United States Probation Office also noted its opposition to Wagner's request for compassionate release in a letter sent to the Court.

# I. BACKGROUND

In August 2018, law enforcement seized over 122,000 prescription pills and thirteen firearms—several of which were stolen—from Wagner's home. (Dkt. #34). Wagner was charged and pleaded guilty to possession with the intent to distribute oxycodone and other controlled substances in violation of 21 U.S.C. § 841(a) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (Dkt. #32, #33, #34). He was sentenced by the Honorable Marcia A. Crone to a 195-month term of imprisonment. (Dkt. #44).

In May 2020, Wagner filed an Emergency Motion for a Reduction or Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Pertaining to COVID-19 due to his risk of contracting COVID-19. (Dkt. #47). Judge Crone denied that motion. (Dkt. #54). In February 2021, Wagner filed a Motion Requesting Leave to Amend 18 U.S.C. § 3582(c)(1)(A)(i) Emergency Motion for a Reduction or Modification of Sentence Pertaining to COVID-19 in which he requested that the Court consider his neurological disease Cerebral Autosomal Dominant Arteriopathy with Sub-Cortical Infarcts and Leukoencephalopathy ("CADASIL") in considering his request for compassionate release. (Dkt. #56). Judge Crone construed the motion as a request to reconsider her previous order denying compassionate release and denied the motion, finding that Wagner's CADASIL diagnosis was "not terminal, [did] not substantially diminish his ability to provide self-care in the institutional setting, or

otherwise present extraordinary and compelling reasons justifying compassionate release."[2] (Dkt. #69 at 1, 7).

Before filing the instant compassionate release motion, Wagner submitted a request for compassionate release to his warden, claiming he had a terminal illness. (Dkt. #72-1 at 1). The warden denied Wagner's request because his "illnesses are not considered life-threatening" and he does not have "a higher mortality rate, compared to [his] peers with similar health conditions." (Dkt. #72-2).

After receiving the warden's denial, Wagner filed the instant compassionate-release motion in this Court. (Dkt. #72). At that time, he had served approximately 27% of his sentence. (Dkt. #72-1 at 19). In the motion, Wagner reasserts his previous arguments regarding his fear of contracting COVID-19—an argument twice rejected by Judge Crone—and his CADASIL diagnosis—an argument also previously rejected by Judge Crone. Wagner also introduces new evidence about his CADASIL diagnosis and presents a new argument regarding a medical recommendation that he apply to participate in a clinical trial. For the reasons described herein, the Court finds these new arguments unavailing.

## II. LEGAL STANDARD

Although motions for reconsideration are not "explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural

---

[2] As an additional rationale for denying Wagner's second compassionate release motion, Judge Crone noted that Wagner had only served 16% of his 195-month sentence at the time of filing the motion, and thus releasing him so early "would not provide just punishment for the offense or afford adequate deterrence to criminal conduct under the factors set forth in 18 U.S.C. § 3553(a)." (Dkt. #69 at 11).

device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (per curiam). The Supreme Court has analyzed reconsideration motions in criminal cases similarly to those in the civil context, at least as to the motions' effect on appellate deadlines. *United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). Courts have inferred from *Healy*'s reasoning that "motions to reconsider in criminal prosecutions are proper and [should] be treated just like motions in civil suits." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). Where, as here, a defendant files a motion to reconsider more than twenty-eight days after the denial of the compassionate-release motion, the Fifth Circuit has stated that courts should "treat it as if it were a Rule 60(b) motion, as long as the grounds asserted ... would also support Rule 60(b) relief." *United States v. Garrett*, 15 F.4th 335, 339 (5th Cir. 2021) (per curiam) (quotation omitted).

A court may grant a Rule 60(b) motion in a civil case for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, the judgment is based on an earlier judgment that has been reversed or vacated, or applying the judgment prospectively is no longer equitable; or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b). "Not enumerated, but acknowledged by the Fifth Circuit as a basis for Rule 60(b) relief, is to rectify an obvious error of law." *Garrett*, 15 F.4th at 339 n.5 (quotation omitted). Decisions on Rule 60(b) motions are

"left to the sound discretion of the district court." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quotation omitted).

### III. DISCUSSION

**A. Motion to Provide Documentary Evidence (Dkt. #73)**

First, Wagner's Motion to Provide Documentary Evidence in Support of 18 U.S.C. § 3582(c)(1)(A)(i) Compassionate Release Motion, (Dkt. #73), is **GRANTED**. Accordingly, the Court will consider such evidence presented in that motion in determining Wagner's eligibility for compassionate release.

**B. Motion to Provide Documentary Medical Evidence Under Seal (Dkt. #83)**

Second, the Court addresses Wagner's Motion to Provide Documentary Medical Evidence Under "Seal." (Dkt. #83). Largely, the motion replies to arguments presented in the Government's response to Wagner's compassionate release motion. (Dkt. #83 at 1–2) (responding to arguments made by the Government in its opposition). But Wagner already filed a reply, (Dkt. #82), which the Court properly considered. Wagner—like all other parties before the Court—is entitled to one reply, not two. *See* Local Rule CR-47(b)(2) ("Unless otherwise directed by the presiding judge, a party who has filed an opposed motion may serve and file *a* reply brief responding to the issues raised in the response within seven days from the date the response is served." (emphasis added)). Accordingly, the Court will not consider his arguments that reply to the Government's opposition.

Wagner also attaches to the motion two Federal Bureau of Prisons ("BOP") Health Services reports describing his condition as of September 30, 2021, and

May 18, 2022. (Dkt. #83-3, #83-4). The Court will consider these in evaluating his eligibility for compassionate release.

Finally, as to the request to file the motion and the attachments to the motion under seal, Wagner has offered no reason to seal these materials.[3] *See* (Dkt. #83). The Court finds no reason to do so here. The Fifth Circuit has held that "courts should be ungenerous with their discretion to seal judicial records" because the American courts are public, and excessive secrecy would not be good for the public judicial system. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418–21 (5th Cir. 2021).

To be entitled to the requested seal, Wagner must show that the parties' "interests favoring nondisclosure" outweigh "the public's common law right of access." *Id.* at 419. Wagner presents no arguments in this regard and the Court finds no adequate justification for doing so.

Accordingly, Wagner's Motion to Provide Documentary Medical Evidence Under "Seal," (Dkt. #83), is **GRANTED in part and DENIED in part**. While the Court will consider the two BOP Health Services reports he submitted, these attachments as well as the underlying motion will be unsealed on the public docket.

## C. Motion for Compassionate Release (Dkt. #72)

Third, the Court turns to Wagner's instant motion for compassionate release—which the Court construes as a motion for reconsideration—considering the evidence

---

[3] Indeed, it is unclear whether Wagner is in fact requesting that these documents be filed under seal or whether he was merely using a form document with such "seal" language already included. Notably, the body of the motion includes no language regarding sealing the motion or its attachments; the only time the word "seal" appears is in the title of the motion. (Dkt. #83).

presented in the motion as well as the evidence presented in the aforementioned motions to provide documentary evidence.

Wagner presents three arguments in his reconsideration motion. *First*, he contends that his CADASIL diagnosis is a terminal illness, making him eligible for compassionate release. (Dkt. #72 at 13–14). *Second*, he argues that reconsideration is warranted because of a neurologist's recommendation that he apply to participate in a clinical trial for his CADASIL disease, which he would be unable to do within the prison system. (Dkt. #72 at 14); *see also* (Dkt. #72-3 at 2) (recommendation from physician to apply to participate in clinical trial). And *third*, he avers that reconsideration is warranted in light of his susceptibility to COVID-19. (Dkt. #72 at 8–13). The Court finds these arguments unpersuasive.

### i. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the BOP if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the

applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts

8

considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by

prisoners. 993 F.3d at 392.[4] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

### ii. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitutes an "extraordinary and compelling reason" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs

---

[4] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in

Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement applicable here

because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because

Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Wagner has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### iii. Exhaustion

As an initial matter, the Court may consider Wagner's compassionate-release motion only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Wagner requested compassionate release from the warden of his facility on some of the grounds asserted before this Court—namely, his CADASIL diagnosis, a physician's recommendation

that he apply to participate in a clinical trial regarding CADASIL, and his prior case of COVID-19 and risk of reinfection—and the warden denied his request. *See* (Dkt. #72-1, #72-2); *see also* 28 C.F.R. § 571.61(a) (providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his facility). Therefore, Wagner's motion is properly before this Court.

### iv.   "Extraordinary and Compelling Reasons" Warranting Release

After reviewing Wagner's motion and the record, the Court concludes that Wagner's motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Wagner argues that his (1) CADASIL diagnosis, (2) medical recommendation to apply to participate in a clinical trial, and (3) susceptibility to COVID-19 constitute "extraordinary and compelling reasons" warranting his release. The Court finds that none of Wagner's rationales constitute "extraordinary and compelling reasons" to justify compassionate release. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Wagner's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal to his motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant

guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Wagner's allegedly "extraordinary and compelling reasons" should be similar in kind to those enumerated by the Sentencing Commission.

Wagner's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

16

U.S.S.G. § 1B1.13 cmt. n.1(A).

In determining whether an illness qualifies as "terminal" or "serious" such that it can serve as an "extraordinary and compelling" basis for release, courts look to the defendant's level of care in the prison system and ability to care for himself while incarcerated. *See, e.g., United States v. Rangel-Sandoval*, No. 3:17-CR-0341-B-9, 2021 WL 2580502, at *3–4 (N.D. Tex. June 23, 2021) (denying compassionate release where defendant's stage 3 cervical cancer, hypertension, calculus of kidney, liver disease, gastro-esophageal reflux disease, myopia, carpal tunnel syndrome, vitamin D deficiency, hyperlipidemia, major depressive disorder, and post-traumatic stress disorder were properly treated within the prison system and there was no evidence that the defendant would receive better care if released); *United States v. Reed*, 464 F.Supp.3d 854, 861 (E.D. La. 2020) (denying compassionate release where defendant's prostate cancer, coronary artery disease, diabetes, and high blood pressure did not constitute "extraordinary and compelling" circumstances as they were being appropriately treated within the prison system and did not diminish his ability to provide self-care). Additionally, courts have noted that the determination of whether an illness is "terminal" turns on the progression of the disease and the severity of the symptoms experienced by the defendant. *See, e.g., United States v. Creamer*, No. 3:19-CR-168-TJC-JBT, 2022 WL 195311, at *3 (M.D. Fla. Jan. 21, 2022) ("While a diagnosis of congestive heart failure may not be sufficiently advanced in every single case to qualify as a 'terminal illness' . . . it does qualify as such in [this] case."). Here, none of the rationales Wagner presents qualify as "extraordinary and

compelling reasons" to warrant compassionate release. The Court addresses each of Wagner's arguments in turn.

### a. Wagner's CADASIL Diagnosis

In reviewing the record before the Court, Wagner has not established that his CADASIL diagnosis is a "terminal" or "serious" illness that substantially diminishes his ability to provide self-care within the BOP. Judge Crone previously ruled that Wagner's CADASIL did not satisfy the "extraordinary and compelling" threshold to qualify for compassionate release because Wagner's CADASIL and other medical conditions were "not terminal, [did] not substantially diminish his ability to provide self-care in the institutional setting, or otherwise present extraordinary and compelling reasons justifying compassionate release." (Dkt. #69 at 7).

Wagner's instant motion for reconsideration includes several new buckets of evidence about his CADASIL diagnosis that the Court will consider. *First*, he includes notes from neurologist Dr. John Orr dated September 7, 2021, and October 6, 2021. (Dkt. #72-3). *Second*, he includes a clinical encounter note from BOP Health Services social worker Marilyn Sturdivant dated May 18, 2022. (Dkt. #83-3). *Third*, he includes a clinical encounter report from BOP Health Services Dr. Hernan Reyes dated July 30, 2021. (Dkt. #83-4). *Fourth*, he includes an Italian CADASIL study from April 2021. (Dkt. #73-1). *And fifth*, he includes a clinical encounter note from BOP Health Services social worker Joelle Silva dated September 21, 2021. (Dkt. #72-1 at 14).

Wagner argues that this newly presented evidence establishes that he has a life-threatening, terminal disease because he has a high risk of suffering from a stroke and his alleged family history of CADASIL leading to death. However, considering all of Wagner's newly presented evidence, the Court does not find sufficient evidence showing that his specific CADASIL diagnosis is "terminal" or "serious" such that it substantially diminishes his ability to provide self-care with the BOP.[5] The Court addresses each new bucket of evidence in turn.

**Dr. Orr notes.** Dr. Orr's two notes from September 7, 2021, and October 6, 2021, do not establish that Wagner cannot provide self-care due to his CADASIL diagnosis. Dr. Orr's September note confirms that Wagner's symptoms are consistent with his CADASIL diagnosis. Specifically, the September note indicates that Wagner's "neurological condition is extremely rare [and] produces strokes and dementia." (Dkt. #72-3 at 3). However, Dr. Orr noted that while Wagner is known to have prior lacunar strokes due to his CADASIL, he did not have any symptoms suggestive of a recent stroke. (Dkt. #72-3 at 3–4) ("I see no new signs of neurologic deficits consistent with strokes."). And Dr. Orr indicated that there are "no new symptom complaints regarding [Wagner's] CADASIL syndrome." (Dkt. #72-3 at 3).

In his October 2021 note, Dr. Orr wrote that Wagner had a 100% chance of developing vascular dementia by the age of sixty-five. (Dkt. #72-3 at 2). Wagner is currently forty-three years old. *See* (Dkt. #72-3 at 1). And while Dr. Orr claimed that

---

[5] The United States Probation Office noted in its letter to the Court that "even with his diagnosis of CADASIL, [Wagner] is a care level 2 on the BOP medical scale, which indicates his medical issues are easily treated by BOP medical staff."

the risk of death is much higher in patients with vascular dementia, he notably did not diagnose Wagner with vascular dementia. (Dkt. #72-3 at 2). Finally, Dr. Orr again confirmed Wagner's CADASIL diagnosis based on his symptoms including a history of "lacunar type" strokes and "MRI imaging [that] [was] completely abnormal and show[ed] evidence of diffuse cortical leukoencephalopathy consistent with CADASIL." (Dkt. #72-3 at 2). At the conclusion of his note, Dr. Orr recommended that Wagner (1) "continue current therapy for prevention of complications of cardiovascular disease and (2) "follow-up with neurology on a[n] [as needed] basis." (Dkt. #72-3 at 3). In a separate portion of the note, Dr. Orr also recommended that Wagner apply to participate in a CADASIL related clinical trial, which the Court addresses *infra* Section III(C)(iv)(b). Finally, Dr. Orr advised that Wagner should be transported to a hospital outside of the BOP if he suffers another stroke. (Dkt. #72-3 at 1–2).

As noted in the Sentencing Commission's application note 1 to U.S.S.G. § 1B1.13, to qualify as an "extraordinary and compelling" reason for release, the defendant's hardship must be *presently* affecting them. *See* U.S.S.G. § 1B1.13 cmt. n.1. Dr. Orr's notes do not indicate that Wagner is currently suffering from an illness that cannot be cared for in the BOP's custody. Rather, Dr. Orr indicated that Wagner is almost certainly going to suffer from vascular dementia by the age of sixty-five, significantly increasing his risk of death. But Wagner, who is only forty-three years old, is not currently diagnosed with vascular dementia.

There is no analogous provision in Section 1B1.13 or its commentary where the increased risk of *future* hardship caused by incarceration is considered an

"extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i). Therefore, Wagner's chance of developing dementia in the future does not qualify as a presently "terminal" or "serious" illness. The fact that Wagner's CADASIL *may* increase his likelihood of death at a later date—if and when he is diagnosed with dementia—is an insufficient basis for granting compassionate release now. *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021), *cert. denied*, 141 S.Ct. 2688 (2021) (finding defendant's "chronic illnesses plac[ing] him at a higher risk of severe symptoms" from COVID-19 did not create justification for compassionate release). Indeed, a prison's ability to treat such condition must be part of the compassionate release analysis. *See United States v. Carbajal*, No. 2:12-CR-00010-JRG(1), 2022 WL 17736349, at *5 (E.D. Tex. Dec. 16, 2022) (holding that defendant's "treatable diabetes and hypertension" within the BOP's custody were insufficient to constitute "extraordinary and compelling reasons" for compassionate release). Here, Wagner has not presented evidence that his CADASIL cannot be treated within the BOP. And Dr. Orr's own note recommends that Wagner continue receiving treatment—including medications—within BOP, follow up with neurology in the BOP if necessary, and advises a course of action in the event that Wagner suffers another stroke. (Dkt. #72-3 at 2).

**Ms. Sturdivant notes.** As to Wagner's second bucket of new evidence, Sturdivant's notes from Wagner's May 18, 2022, BOP Health Services clinical encounter do not support Wagner's claim for compassionate release. Sturdivant described a May 12, 2022, visit when Wagner went to the hospital to rule out a stroke,

and it was determined that Wagner did not have a stroke. Sturdivant's notes also indicate that while Wagner noted that he had a terminal illness, he denied being within eighteen months or less of death and stated that he was "feeling great." (Dkt. #83-3). These notes cannot serve as basis for granting Wagner compassionate release as they do not indicate that Wagner was suffering from a "terminal" or "serious" illness that prevented him from providing self-care. In fact, Sturdivant reported that Wagner could care for himself and listed Wagner at a Care Level 2, illustrating that he could function independently.[6] (Dkt. #83-3).

**Dr. Reyes notes.** Wagner's third bucket of new evidence—Dr. Reyes's notes on July 30, 2021—do not support his request for compassionate release. The notes place Wagner at a Care Level 3 for poor long-term health.[7] (Dkt. #83-4 at 4). Because this note was drafted nearly a year before Sturdivant's notes—which placed Wagner at a Care Level 2—it is apparent that sometime between July 2021 and May 2022,

---

[6] "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." FED. BUREAU OF PRISONS CLINICAL GUIDANCE, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, at 2 (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

[7] "Care Level 3 inmates are outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications. They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization." FED. BUREAU OF PRISONS CLINICAL GUIDANCE, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, at 3 (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

Wagner's condition improved such that he could be transitioned from Care Level 3 to Care Level 2.

Dr. Reyes also noted that due to his CADASIL diagnosis, Wagner had a decreased life expectancy and high risk of multiple strokes. (Dkt. #83-4 at 2). This note is given more context when viewed along with Dr. Orr's reports, which connected Wagner's decreased life expectancy to his future development of vascular dementia. Dr. Orr's report also provided BOP with a protocol if Wagner suffers a stroke.

But while Dr. Reyes's notes indicate that Wagner is at high risk for stroke, Wagner has not presented evidence that the BOP cannot follow the protocol recommended by Dr. Orr in the event he has another stroke. Further, as the record establishes that CADASIL has differing rates of progression and survival, *see* (Dkt. #83-3) (noting that National Institute of Neurological Disorders describes CADASIL as progressing variably among patients), Dr. Reyes's notes do not state that Wagner is exhibiting terminal or end of life manifestations or that he cannot care for himself. *See* (Dkt. #83-4). Therefore, Dr. Reyes's report does not establish that Wagner has a "terminal" or "serious" illness that prevents him from providing self-care within the BOP.

***Italian study on CADASIL.*** Fourth, Wagner submits an Italian study that explored the relationship between hypertension and cardiac autonomic neuropathy in CADASIL patients. (Dkt. #73-1 at 1). This study measured ten patients and found that patients with CADASIL "may be at risk for life-threatening arrhythmias." (Dkt. #73-1 at 2). At the outset, the Court questions the reliability of a study with

such a small sample size. But even if the Court accepts the findings of this study, it does not provide guidance on Wagner's specific diagnosis. Indeed, as previously mentioned, the Court recognizes—and the documentation produced by Wagner supports the proposition—that CADASIL progresses differently for different patients. *See, e.g.*, (Dkt. #83-3). Accordingly, because this study does not provide any new information about Wagner's specific CADASIL diagnosis, it cannot serve as a basis for granting compassionate release.

**Ms. Silva's notes.** Wagner's fifth bucket of new evidence, Silva's notes from Wagner's September 21, 2021, clinical encounter at the BOP Health Services, also does not establish that he is suffering from a "terminal" or "serious" illness that prevents him from providing self-care within the BOP. While Wagner self-reports that his mother's death, along with the deaths of other relatives, were due to CADASIL, there are no other documents in the record to corroborate his claim.[8] (Dkt. #72-1 at 14). And regardless, even if Wagner established that he has family members that experienced advanced, fast-acting CADASIL, given CADASIL has different rates of progression in different patients, Wagner has not demonstrated that he has the same diagnosis.

---

[8] The Court notes that while there is other evidence in the record that Wagner has a family history of CADASIL, *see, e.g.*, (Dkt. #72-3), there is no other evidence in the record linking their cause of death to CADASIL.

### 1. Wagner's new evidence does not establish that his CADASIL diagnosis is terminal.

As described herein, none of the new buckets of evidence establish that Wagner's CADASIL diagnosis is "terminal," such that his CADASIL is advanced or that he is on an end-of-life trajectory.[9] Similarly, all the evidence taken together does not demonstrate that Wagner is on an end-of-life trajectory. While a "specific prognosis of life expectancy . . . is not required," examples of terminal diseases include "solid-tumor cancer, . . . end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). While Wagner has presented medical evidence that CADASIL can lead to dementia, there is no evidence that Wagner's condition has progressed to dementia, let alone advanced dementia. And at forty-three years old, Wagner has not established that he is currently on an end-of-life trajectory. Rather, he appears to be receiving proper treatment within the BOP and his symptoms largely controlled. Because there is not sufficient evidence that Wagner's CADASIL diagnosis is "terminal" and advanced—as Wagner alleges—the Court concludes that Wagner's CADASIL does not constitute an "extraordinary and compelling reason" to warrant compassionate release on that basis.[10]

---

[9] The Court also reviewed and considered Wagner's May 27, 2022, BOP Health Services Medical Chart, (Dkt. #72-4), Wagner's BOP Individualized Needs Plan – Program Review dated August 9, 2021, (Dkt. #72-15), and multiple articles about CADASIL and polyneuropathy, (Dkt. #72-5). None presents an "extraordinary and compelling" rationale for release.

[10] Without any evidence, Wagner contends that he has a "projected life expectancy of 2023, based upon his family members that had CADASIL and died." (Dkt. #72 at 14). The Court will not consider this unsubstantiated claim that lacks any basis in the medical documents that Wagner himself submitted to the Court.

### 2. Wagner's new evidence does not establish that his illness renders him unable to care for himself.

Regardless of whether Wagner's CADASIL is "terminal," the Court acknowledges that at a minimum it is a "serious physical or medical condition." But even though his CADASIL is "serious," Wagner fails to establish that he is unable to care for himself. In determining Wagner's care level, the Court refers to the most recent medical document that Wagner submitted as to his care level—Sturdivant's May 2022 notes that listed Wagner at a Care Level 2. (Dkt. #83-3). As a Care Level 2 patient, Wagner's medical conditions are treatable by BOP medical staff and manageable through routine and enhanced medical resources. And notably, Wagner has not provided evidence showing that he is unable to care for himself, and there is no evidence that he would receive better care if released. Accordingly, Wagner's CADASIL does not constitute an "extraordinary and compelling reason" to warrant compassionate release. *See, e.g.*, *Rangel-Sandoval*, 2021 WL 2580502, at *4 (concluding that defendant's stage 3 cancer did not qualify as "extraordinary and compelling" because the inmate was receiving regular treatment and medications in prison and there was no evidence she would receive better care if released); *United States v. Foots*, No. 3:07-CR-0285-B-1, 2023 WL 185097, at *4 (N.D. Tex. Jan. 13, 2023) (rejecting the defendant's allegations of inadequate medical care as a basis for

compassionate release because "there is no indication that [the defendant] would receive better care for his conditions if released").

### b. Neurologist's Recommendation that Wagner Apply to Participate in a Clinical Trial

Next, neurologist Dr. Orr's recommendation that Wagner participate in a tertiary-level medical school-based specialty clinic so that he may be able to get matched with a clinical trial is similarly not an "extraordinary and compelling reason" to grant compassionate release. Dr. Orr visited with Wagner on September 7, 2021, and confirmed Wagner's CADASIL diagnosis. (Dkt. #72-3 at 1). In his notes from that visit, Dr. Orr recommended the following:

> I had also recommended this patient be considered for compassionate release so that he could attend a tertiary level medical school based specialty clinic in cerebrovascular disease to be followed by a specialist in this disorder so that they may be able to enroll him in clinical trials that will provide hopefully a treatment and cure for this disorder in the future for other patients.

(Dkt. #72-3 at 2).[11] Dr. Orr qualified his recommendation by acknowledging that his suggestion is based on Wagner's medical history alone, not considering the "patient's legal ramifications for being incarcerated in the Federal Bureau of Prisons or for his compassionate release based on any other character traits, moral issues or medical legal judgement." (Dkt. #72-3). Additionally, Dr. Orr noted that a specialist "*may* be able to enroll [Wagner] in clinical trials." (Dkt. #72-3 at 2) (emphasis added).

---

[11] Dr. Orr concluded his report by making two overall recommendations—notably not mentioning the possibility of Wagner's participation in a clinical trial. (Dkt. #72-3 at 2). Dr. Orr's two recommendations—to continue with therapy and to follow up with neurology on an as-needed basis—are presently available to Wagner within the BOP. *See* (Dkt. #72-3 at 2).

However, Wagner's ability to participate in a clinical trial is speculative and there is no guarantee that Wagner would be accepted into such clinical trial. Thus, it is highly unlikely, if not improbable, that (1) Wagner would be selected to participate in a CADASIL clinical trial; (2) that trial finds a cure for CADASIL; and (3) the cure is discovered in time to benefit Wagner's condition.

Further, the Court finds no precedent—and Wagner cites none—for granting compassionate release based on the *possibility* that a defendant could participate in a clinical trial, as is the case here. And even if Wagner were to be selected for a clinical trial, there is no guarantee that Wagner would be receiving better care or symptom management than what he is currently receiving while incarcerated.[12] In fact, enrolling in a clinical trial cannot be considered medical care as the participant may receive a placebo. But even if the participant receives the intended treatment, he may not benefit from or may encounter negative results from such treatment. Accordingly, a participant in a clinical trial does so largely for the benefit of others who may receive treatments as a result of the research gained from such trials. Here, both Wagner and Dr. Orr agree with such sentiment that Wagner's possible participation in a clinical trial is unlikely to benefit Wagner himself. *See* (Dkt. #72 at 8) ("[W]hile the tertiary level medical school-based specialty clinic in cerebrovascular disease clinical

---

[12] If Wagner is not satisfied with the level of care he is receiving within the BOP, he can lodge a separate habeas petition raising such concerns. *See United States v. Sierra*, CR-17-00249, 2021 WL 2636738, at *3 (W.D. La. June 25, 2021) (explaining that a complaint for inadequate medical care is not appropriately addressed in a request for compassionate release but rather should be raised in a habeas petition under 18 U.S.C. § 2255 or a *Bivens* action).

trials may not save Mr. Wagner's life, they may save others!"); (Dkt. #72-3 at 2) (noting, by Dr. Orr, that Wagner's participation in a clinical trial "will provide hopefully a treatment and cure for this disorder in the future for *other* patients" (emphasis added)). While Wagner's interest in contributing to medical research aimed at finding a treatment or cure for CADASIL is commendable, it does not qualify as an "extraordinary and compelling reason" to warrant compassionate release.[13]

---

[13] Wagner also lodges an Eighth Amendment claim based on the BOP's refusal to permit him to potentially participate in a clinical trial as recommended by Dr. Orr. (Dkt. #72 at 6). However, a motion for compassionate release is not the proper vehicle to raise an Eighth Amendment claim seeking release from custody. Rather, such constitutional complaints seeking release must be raised in a separate habeas petition. *See Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("We have noted that a habeas petition is the proper vehicle to seek release from custody." (quotations omitted)). Thus, courts have ordered that a constitutional claim must be brought in a separate action from a motion for compassionate release. *See, e.g.*, *United States v. Isidaehomen*, No. 3:16-CR-0240-B-4, 2021 WL 243458, at *1 (N.D. Tex. Jan. 25, 2021) (ordering a constitutional claim brought within a motion for compassionate release to be properly opened as a separate civil action); *United States v. Sanchez-Rodriguez*, No. 3:14-CR-0112-B-5, 2020 WL 5057447, at *3 n.5 (N.D. Tex. Aug. 27, 2020) ("Insofar as [the defendant] seeks judicial review of [their] conditions of confinement regardless of [their] compassionate-release request, the proper vehicle for asserting an Eighth Amendment claim is a civil rights lawsuit."). Therefore, Wagner's Eighth Amendment claim is not properly presented in his instant motion for compassionate release.

However, the Court cautions Wagner that he is unlikely to succeed in a separate Eighth Amendment habeas action. The Eighth Amendment does not provide a prisoner a right to participate in an early-stage clinical trial—let alone the right to be released pending the *possibility* of participating in such trial. While the Eighth Amendment affords prisoners the right to healthcare, it is limited to the care provided within the prison system. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *See also Gibson v. Collier*, 920 F.3d 212, 216 (5th Cir. 2019) (holding that the refusal of a nonessential treatment is not cruel and unusual punishment). Indeed, the Eighth Amendment "proscribes only medical care so unconscionable as to fall below society's minimum standards of decency." *Gibson*, 920 F.3d at 216 (quotations omitted). With these principles in mind, it is hard to fathom that Wagner's possible participation in a clinical trial would fall under the protections of the Eighth Amendment.

### c. COVID-19

Finally, the Court turns to Wagner's COVID-19 contention. Judge Crone has twice considered and rejected Wagner's argument that his concern of contracting COVID-19 could serve as a basis for granting him compassionate release. (Dkt. #54 at 7); (Dkt. #69 at 11). And in the later decision, Judge Crone considered and rejected the argument that COVID-19 together with CADASIL establishes a basis for compassionate release. (Dkt. #69 at 8). Wagner presents no justification for re-addressing this issue yet another time.

Significantly, since Judge Crone's latest May 2021 order, the state of COVID-19 has changed drastically. First and foremost, the United States is no longer in the midst of a COVID-19 pandemic. Both international and domestic health authorities, particularly the World Health Organization,[14] the United States Centers for Disease Control and Prevention,[15] and the federal government,[16] have made clear that the

---

[14] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV]; Aria Bendix, *WHO Declares End to Covid Global Health Emergency*, NBC NEWS (May 5, 2023), https://www.nbcnews.com/health/health-news/who-ends-covid-global-health-emergency-rcna83046 [https://perma.cc/ZP2G-K7TH].

[15] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[16] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

COVID-19 pandemic has ended.[17] Thus, the premise of Wagner's claim—namely, that the COVID-19 pandemic itself constitutes an "extraordinary and compelling reason" for his compassionate release—lacks any foundation going forward. *See* (Dkt. #72 at 8–13).[18] Likewise, any residual risk that Wagner faces from the virus is too speculative to constitute an "extraordinary and compelling reason" for release within the meaning of Section 3582(c)(1)(A)(i). And because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, Wagner's motion cannot be granted on that basis.

### v.   Section 3553(a) Factors

Even if Wagner could establish that "extraordinary and compelling reasons" warrant his release, his motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against him. Wagner was sentenced to 195 months in prison with a projected release date of June 7, 2032. (Dkt. #72-1 at 18). Accordingly, he has served approximately 27% of his sentence. Wagner has failed to show how releasing him before he serves the full term or a much more significant portion of his sentence would align with the statutory sentencing factors—notably the seriousness of his offense, the need to promote respect for the

---

[17] *See also United States v. Ford*, No. 1:16-CR-19-HAB, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

[18] The Court has reviewed and considered the newspaper articles relating to COVID-19 included in Wagner's exhibits. *See* (Dkt. #72-6–#72-14). The Court has also reviewed and considered the June 8, 2022, Prison Memorandums discussing changes to Level 3 Operations due to COVID-19. *See* (Dkt. #72-16).

law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

District courts are obligated to consider the sentencing factors when determining eligibility for compassionate release, and sentencing factors can be the sole reason for denying compassionate release to an otherwise eligible party. *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021). The Fifth Circuit has acknowledged that even in cases of terminal illness, when the sentencing factors weigh against a defendant, compassionate release may still be denied. *United States v. Yrdanoff*, No. 22-10484, 2022 WL 17713067, at *1 (5th Cir. Dec. 14, 2022); *See also United States v. Rollins*, 53 F.4th 353, 355, 359 (5th Cir. 2022) (holding that the "abuse-of-discretion standard is a demanding one" and affirming denial of compassionate release to defendant who required hemicorporectomy and round-the-clock care).

Wagner was convicted of illegally selling prescription narcotics and possessing firearms in furtherance of a drug trafficking crime, both serious crimes with grave ramifications on the community at large. (Dkt. #32, #33, #34). Law enforcement seized over 122,000 dosage units of narcotics from Wagner's house, warehouse, and storage units, as well as thirteen firearms, several of which were stolen. (Dkt. #34). These are serious offenses requiring a significant period of incarceration.

The Court recognizes that Wagner has been misconduct-free while incarcerated and seeks to help society by applying to participate in a CADASIL clinical trial. And the Court commends him for that desire. But Wagner has completed only around a quarter of his sentence and still has nearly nine years

remaining before he is scheduled for release. Wagner fails to show how his early release for a serious drug offense and firearms crime would adequately reflect the nature of his offense, promote respect for the law, and provide just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Accordingly, Wagner's compassionate release motion is also denied on this basis.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Wagner's Motion to Provide Documentary Evidence in Support of 18 U.S.C. § 3582(c)(1)(A)(i) Compassionate Release Motion, (Dkt. #73), is **GRANTED.**

It is further **ORDERED** that Wagner's Motion to Provide Documentary Medical Evidence Under "Seal," (Dkt. #83), is **GRANTED in part and DENIED in part**. The clerk is directed to unseal the entirety of Dkt. #83, including its attachments, on the public docket.

It is further **ORDERED** that Wagner's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #72), is **DENIED**.

**So ORDERED and SIGNED this 18th day of August, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE