UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **<u>SEALED</u>** |
| v. | § | CRIMINAL NO. 4:18-CR-155-SDJ |
| | § | |
| FLOYD DARIL WAGNER | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are several of Defendant Floyd Daril Wagner's motions for compassionate release. (Dkt. #87, #89, #93). Having considered the motions, the Government's filings, and the applicable law, Wagner's motions are **DENIED**.

### I. BACKGROUND

Wagner pleaded guilty to (1) possession with intent to distribute oxycodone and other controlled substances in violation of 21 U.S.C. § 841(a)(1), and (2) possession of firearms in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). (Dkt. #32 ¶ 2). According to the factual basis Wagner signed, when the Government executed its search warrant for Wagner's residence, it located "[o]ver 122,000 prescription pills, including Oxycodone" and "thirteen firearms, some of which had been reported stolen." (Dkt. #34 ¶¶ 2–3). On July 25, 2019, Wagner was sentenced to two terms of imprisonment to run consecutively: a 135-month term and a 60-month term for a total of 195 months of imprisonment. (Dkt. #44 at 2). The supervised release terms—36 months and 60 months respectively—are to run concurrently for a total of 60 months of supervised release. (Dkt. #44 at 3).

Less than a year into his sentence, Wagner filed a motion for compassionate release, citing increased health risks based on his medical conditions and the COVID-

19 pandemic. (Dkt. #47). The Court denied that motion, finding that "Wagner has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere." (Dkt. #54 at 10). After an unsuccessful appeal of that Order to the Fifth Circuit, (Dkt. #68), Wagner filed another motion for compassionate release, re-asserting the same arguments based on his medical conditions and the COVID-19 pandemic. (Dkt. #72). The Court denied that motion for similar reasons:

> [T]he premise of Wagner's claim—namely, that the COVID-19 pandemic itself constitutes an "extraordinary and compelling reason" for his compassionate release—lacks any foundation going forward. *See* (Dkt. #72 at 8–13). Likewise, any residual risk that Wagner faces from the virus is too speculative to constitute an "extraordinary and compelling reason" for release within the meaning of Section 3582(c)(1)(A)(i).

(Dkt. #85 at 31) (internal footnote omitted). Still undeterred, Wagner filed two more motions for compassionate release, regurgitating the same arguments he put forth in his prior motions. (Dkt. #87, #89); *see, e.g.*, (Dkt. #87 at 25) ("Wagner's medical conditions are severe, and warrant this Court's analysis and the granting of his request for compassionate release."); (Dkt. #89 at 21) ("As Mr. Wagner argued to the Warden, he suffers from a myriad of medical conditions, including kidney and heart disease, and the rare and severe CADASIL disease, which have been thoroughly argued above in Section VI.").

He then filed another motion for compassionate release. (Dkt. #93). But this motion was different because it included a potentially relevant change in Wagner's health:

Mr. Wagner offers as Exhibit 1, the Bureau of Prisons, outside neurologist physician consultation report of September 4, 2024. The neurologist report clearly states:

> 1. Mr. Wagner had another serious stroke caused by his CADASIL disease.
>
> 2. Mr. Wagner's life trajectory is less than 18 months. (Emphasis Supplied). Signed by Dr. Orr, Neurologist.

(Dkt. #93 at 2). Because the existence of a terminal medical condition is relevant to the Court's compassionate-release analysis, it ordered the Government to respond to Wagner's motion and address this medical development. (Dkt. #94 at 1). The Government submitted a response, (Dkt. #97), and a supplement, (Dkt. #98).

In its supplement, the Government reaffirmed that its "position opposing Wagner's motion has not changed":

> The bottom line is that while Wagner's CADISIL condition is rare, complex, and progressive, at this time Wagner's medical circumstances do not rise to the level of extraordinary and compelling reasons for a reduction in sentence under the policy statement set forth in U.S.S.G. § 1B1.13(b)(1) . . . . Wagner is not suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). And while his CADASIL is a serious and uncurable condition, at present it does not substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility. To the contrary, as shown below Wagner is currently fully independent within the confines of the Federal Medical Center at Fort Worth, where he is kept to enable the BOP to provide him the best medical care possible given his various medical conditions. And while Wagner's CADASIL disorder may require long-term, aggressive care, FMC-Fort Worth is providing it.

(Dkt. #99 at 1–2) (cleaned up).

Wagner asks the Court to reduce his sentence to time served and order him released from prison. At this time, Wagner has served less than half of his sentence.

## II. LEGAL STANDARDS

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims." *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district court's[1] jurisdiction are through (1) compassionate-release motions;[2] (2) motions for sentence reduction based on a change in the sentencing guidelines;[3] (3) Rule 35(a)

---

[1] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[2] 18 U.S.C. § 3582(c)(1)(A).

[3] 18 U.S.C. § 3582(c)(2).

motions to correct clear error within fourteen days of sentencing;[4] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[5] (5) Rule 36 motions to correct clerical errors;[6] (6) habeas motions;[7] or (7) any other motion "expressly permitted by statute."[8] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks other relief, they should specifically identify where that relief is expressly permitted by statute.

## B. Motions for Compassionate Release

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id.* § 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the

---

[4] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[5] *Id.*; *see also* FED. R. CRIM. P. 35(b).

[6] FED. R. CRIM. P. 36.

[7] 28 U.S.C. § 2255.

[8] 18 U.S.C. § 3582(c)(1)(B).

sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires sentence reductions to be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings").

And the 2023 amendments[9] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[10] U.S.S.G. § 1B1.13(a); *see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[11] which must also be considered by the court:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

---

[9] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[10] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among others, interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

[11] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion ... where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Based on Wagner's arguments, the Court believes that he seeks to invoke his medical circumstances and rehabilitation as extraordinary and compelling reasons for relief.

## C. Defendant's Medical Circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A).

Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

9

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[12] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no

---

[12] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

longer the case: Both international and domestic health authorities, including the World Health Organization,[13] the United States Centers for Disease Control and Prevention,[14] and the U.S. Federal Government,[15] have made clear that the COVID-19 pandemic has ended.[16] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

## D. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020).

---

[13] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item /05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(20 05)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https:// perma.cc/MR64-X7UV].

[14] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019- ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20 certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[15] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[16] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

## III. DISCUSSION

### A. Administrative Exhaustion

Beginning with exhaustion, the Government concedes that Wagner has exhausted his administrative remedies. (Dkt. #97 at 3) ("[T]he government agrees that Defendant has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A)."). The Court agrees and finds that Wagner has exhausted his administrative remedies.

### B. Compassionate-Release Arguments

Turning to Wagner's substantive arguments, his requests for compassionate release fall under all four medical circumstances detailed by the guidelines. U.S.S.G. § 1B1.13(b)(1)(A)–(D). The Court therefore takes each in turn.

#### i. Terminal illness

Wagner failed to show that he has a terminal illness that constitutes an extraordinary and compelling reason for release. Although Wagner claims that Dr. Orr's note stated that he had suffered "another serious stroke caused by his CADASIL disease" and that his "life trajectory is less than 18 months," (Dkt. #93 at 2), the Court finds these claims to be inaccurate.

13

First, as to the alleged stroke, the Government's investigation into the stroke referred to by Dr. Orr reveals that the treating physician for Wagner's "serious stroke" found that he had not suffered a stroke at all. (Dkt. #99 at 3) (citing (Dkt. #97-1 at 421–24)). Wagner was given fluids, underwent further testing, and then returned to his facility. (Dkt. #99 at 4) (citing (Dkt. #97-1 at 424–40)). Therefore, the Court disregards Dr. Orr's unsupported characterization of Wagner's recent stroke as "serious."

Second, as to his life expectancy, Wagner's assertion that Dr. Orr diagnosed him as having less than 18 months to live because of his CADASIL ailment misconstrues Dr. Orr's note. The Court agrees with the Government: Dr. Orr's note is best read to state that Wagner will likely suffer another CADASIL-related event in fewer than 18 months, not that he has fewer than 18 months to live. (Dkt. #99 at 5–6). As the Government notes, Dr. Orr's vague, nonspecific prediction is insufficient to classify Wagner as terminally ill. This conclusion is further buttressed by the various empirical data on CADASIL provided by the Government. *See* (Dkt. #99 at 6–7) (citing (Dkt. #99-1 at 2)). Given that Wagner's CADASIL condition is not terminal under Section 1B1.13(b)(1)(A), and that Wagner is being provided with the requisite care by his facility, Wagner's claims fail under this section.[17]

---

[17] The other conditions Wagner recites in his motions are far less serious than his CADASIL condition and likewise fail to constitute terminal illnesses warranting release under the Fifth Circuit precedent discussed above. *See supra* Part II.C.

### ii. Medical condition rendering defendant unable to provide self-care

Wagner fails to show that his medical conditions are so severe that his ability to provide self-care has been diminished. To be sure, CADASIL is a serious, progressive condition. (Dkt. #99-1 at 3). But it does not, at this time, substantially diminish Wagner's ability to provide self-care, as noted in Dr. Sergio Mercado's[18] memorandum to the Court:

> As far as his ability to function, currently Mr. Wagner is fully independent and is being housed in general population along with hundreds of other inmates. He has no difficulty walking to and from the housing unit to go for meals or to seek medical attention.

(Dkt. #99-1 at 3). And as Dr. Mercado also notes, the facility has been able to manage his symptoms thus far through medication: "He is on anticoagulation to prevent a stroke, and he is on migraine prevention medication. He is being seen by Neurology, Cardiology, Nephrology, and Hematology." (Dkt. #99-1 at 2). Because Wagner's conditions do not substantially diminish his ability to provide self-care and are managed effectively through medication, his medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *Love*, 853 F.App'x at 987 (quotations omitted).

Moreover, because Wagner has not developed any new medical conditions since the Court's first two orders denying his compassionate-release motions, (Dkt. #54, #85), the Court also rejects these claims for the same reasons it provided in those Orders.

---

[18] Dr. Mercado is the Clinical Director at FMC-Fort Worth—Wagner's facility of incarceration.

### iii. Medical condition requiring specialized care

Wagner also fails to show that he currently lacks adequate medical care to address his long-term medical conditions. As discussed herein, *see supra* Part III.B.ii, Wagner's CADASIL and other conditions are being addressed sufficiently by his facility, (Dkt. #99-1 at 2–3). Additional support for this conclusion comes from the extensive medical records supplied by the Government for Wagner's care while incarcerated. (Dkt. #97-1) (647 pages of Wagner's medical records). In short, the record demonstrates that Wagner's facility has sufficient resources and is providing appropriate care to address his medical conditions.

### iv. Public health emergency increasing risk of medical emergency

Wagner's arguments based on an increased risk of injury or death from the COVID-19 pandemic fail because the pandemic has ended and no longer constitutes an extraordinary and compelling reason for release. *See supra* notes 13–16 and accompanying text. Even if that weren't the case, the Fifth Circuit has repeatedly denied similar motions citing chronic health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). An increased risk of injury or death from the COVID-19 pandemic thus does not constitute an extraordinary and compelling reason for release.

Finally, because Wagner's medical circumstances are neither extraordinary nor compelling, his rehabilitation efforts also fall short: "Rehabilitation of the

defendant alone shall not be considered an extraordinary and compelling reason." *Shkambi*, 993 F.3d at. 391.

\*    \*    \*    \*

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Wagner's motion. *Rollins*, 53 F.4th at 359. Wagner was convicted of two crimes. First, he was convicted of possession with intent to distribute oxycodone and other controlled substances— supported by the discovery of *over 122,000 prescription pills* at his residence. Second, he was convicted of possession of firearms in furtherance of a drug-trafficking crime— supported by the discovery of *thirteen firearms, including some that were stolen*. The first violation can carry a sentence of up to twenty years of imprisonment; the second violation can carry a life sentence and must run consecutively to the term imposed by the first violation. The sentence imposed on Wagner, a 135-month term and a 60-month term for a total of 195 months of imprisonment, was premised on the Court's careful consideration of the Section 3553(a) factors. Wagner asks the Court to release him even though he has served less than half of his sentence. Granting Wagner's request would not reflect the seriousness of his offenses, promote respect for the law, or provide just punishment for his offenses. Nor would it adequately deter future criminal conduct or protect the public.

Further, this Court's statement of reasons for imposing Wagner's sentences further shows why Wagner continues to remain a danger to the community today:

> The court finds this to be a reasonable sentence in view of the nature and circumstances of the offenses[,] . . . [including] the determination

17

that the defendant was responsible for the theft of narcotics from UPS shipments for whom he served as a driver, his selling controlled substances from his home at night after going to a warehouse where he was observed exiting with a box or bag and returning to his residence, the ultimate recovery of 275.08 grams of oxymorphone, 284.05 grams of oxycodone, and 266.17 grams of amphetamine, 13 firearms, numerous items stolen from UPS packages, and approximately $14,000 in cash, his maintaining premises for the purpose of storing and distributing controlled substances, his prior convictions for fictitious counterfeit license inspection and manufacture/delivery of a controlled substance, and his history of substance abuse.

(Dkt. #45 at 4).

Because Wagner has failed to show that there are extraordinary and compelling reasons to reduce his sentence, his motion must be denied. Even if Wagner had made this showing, the Court would still find that his motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

## IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). Defendant Floyd Daril Wagner has failed to meet his burden for each requirement, and his Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, (Dkt. #87), Motion and Request for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #89), and Emergency Sealed Documentary Evidence for Motion for Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i) [RE: ECF NO. 89-91], (Dkt. #93), are therefore **DENIED**.

**So ORDERED and SIGNED this 7th day of April, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE